IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Respondent,

v.       No. 09-CR-209 JEC

JOSE RAUL PELAEZ-DE LA O,

  Movant.

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 3 1 2011

11 CV 559 JEC    MATTHEW J. DYKMAN
        CLERK

### JOSE RAUL PELAEZ-DE LA O'S
### MOTION TO VACATE CONVICTION
### PURSUANT TO 28 U.S.C. § 2255

Jose Raul Pelaez-De La O, by and through counsel of record, Scott M. Davidson,

hereby moves this Honorable Court to vacate his conviction for misprision of felony,

18 U.S.C. § 4, due to counsel's failure to provide correct advice as to the immigration

consequences of pleading guilty to the offense of misprision of felony, contrary to the

requirements of counsel, *see Padilla v. Kentucky*, 130 S. Ct. 1473 (March 31, 2010).

**1. Factual and procedural background.**

The court that entered the judgment of conviction is as follows: the United

States District Court for the District of New Mexico, U.S. Courthouse, 100 North

Church Street, Las Cruces, New Mexico 88001. The criminal docket number of the

conviction is 09-CR-209 JEC. The date of the judgment of conviction is April 23, 2009.

The sentencing hearing was held on April 20, 2009. The length of Mr. Pelaez's

sentence was two years of probation. The nature of the crime to which he pleaded

guilty and for which he was sentenced is misprision of felony, as defined in 18 U.S.C. § 4 ("Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned no more than three years, or both.").

The plea was guilty. Mr. Pelaez did not go to trial. Mr. Pelaez did not testify at a pretrial hearing, trial, or post-trial hearing. Mr. Pelaez did not appeal from the judgment of conviction. Mr. Pelaez has not previously filed any motions, petitions, or applications concerning this judgment of conviction.

**2.     Mr. Pelaez seeks to vacate his conviction on grounds that his plea was not knowing and voluntary due to counsel's failure to correctly advise him of the immigration consequences of pleading guilty to misprision of felony under 18 U.S.C. § 4.**

**A.     Factual Basis of Mr. Pelaez's Claim.**

Mr. Pelaez claims on one ground that his probation and conviction are in violation of the Constitution and laws of the United States.  His plea was not voluntary and knowing and not in accord with due process of law because the attorney appointed by this Court to represent him in this matter did not provide accurate advice as to the immigration consequences of pleading guilty to misprision of felony, 18 U.S.C. § 4.  Mr. Pelaez's attorney at the plea stage advised him that as a Cuban national, a conviction under 18 U.S.C. § 4 (misprision of felony) would not adversely affect his immigration status.  Mr. Pelaez informed his attorney that he would want to be able to travel to Cuba to visit his family there and be able to travel back into the United States.  His attorney advised him that a plea of guilty to 18 U.S.C.

§ 4 would not adversely affect his immigration status.

He was never advised that his "green card" would be cancelled.  Nor was he ever advised that pleading guilty to misprision of felony is a deportable offense.  On the contrary, the statements by government counsel at the plea hearing suggested that there was no more than a "theoretical possibility" that this was a deportable offense. *See* Doc. 35 (plea hearing) at 11.  The judge's and prosecutor's remarks implied that there was only a theoretical or remote possibility of deportation.  *See id.*  Moreover, defense counsel's out-of-court advice to Mr. Pelaez was that it was not a deportable offense, and that Mr. Pelaez's immigration status would not be adversely affected by pleading guilty to misprision of felony.  This is the only reason Mr. Pelaez agreed to plead guilty to this offense.  Mr. Pelaez recently discovered that the advice he received is incorrect.

But for counsel's mis-advice, Mr. Pelaez would have gone to trial to challenge the charges, or sought to agree with the government as a different offense that would not have adverse immigration consequences.

After consulting with an immigration attorney, Mr. Pelaez has learned that in fact a conviction under 18 U.S.C. § 4 is considered to be a crime involving moral turpitude and is a deportable offense under the immigration laws of the United States. *See Matter of Robles*, 24 I & N Dec. 22, 25-27 (BIA 2006).  Mr. Pelaez was informed that immigration authorities in the United States will soon discover that he is convicted of a deportable offense, and will revoke his status as a lawful permanent resident of the United States.  As a Cuban national, he will not be physically removed from the United States, but he will be precluded from traveling outside the United States due to the conviction under 18 U.S.C. § 4.  He will be issued an employment authorization

3

and will be required to report to immigration authorities every three months to advise those officials of his activities here in the United States, his address, and so forth.  Mr. Pelaez's mother, who resides in Cuba, is suffering from cancer.  Mr. Pelaez wants to be able to visit his mother there, but due to the conviction under 18 U.S.C. § 4, and his attorney's incorrect advice as to the immigration consequences of pleading guilty to this offense, he will be unable to travel freely between Cuba and the United States.

**B.**     ***Padilla* applies to Mr. Pelaez's 2009 plea.**

An attorney's duty to advise a non-citizen client of the specific immigration consequences of entering a plea to a deportable offense---such as misprision of felony under 18 U.S.C. § 4---pre-dates the Supreme Court's decision in *Padilla*, because this duty is grounded in the Sixth Amendment right to counsel.  This right has been recognized since the 1930s, and certainly pre-dates Mr. Pelaez's plea in 2009.  The seminal case for ineffective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668 (1984), pre-dates Mr. Pelaez's plea by fifteen years.

**i.     Under Teague *retroactivity analysis*, Padilla *did not announce a new rule.***

For purposes of retroactivity analysis under *Teague v. Lane*, 489 U.S. 288 (1989), the holding in *Padilla* is not a new rule.  *Padilla* applies an old rule to a different factual context.  In *Padilla*, the Supreme Court merely applied the well-established *Strickland* test for ineffective assistance to a defense counsel's failure to advise a non-citizen defendant regarding the possible immigration consequences of a guilty plea.

Under the *Teague* framework, "an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct

4

review," *Whorton v. Bockting*, 549 U.S. 406, 416 (2007)), and "new constitutional rules of criminal procedure will not [generally] be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310.

The vast majority of courts that have considered the retroactivity of *Padilla* over the past twelve months have concluded that it is not a new rule for purposes of *Teague* retroactivity analysis. *See, e.g., United States v. Hubenig*, 2010 WL 2650625, *8 (E.D. Cal. July 1, 2010) ("*Padilla* did not establish a new rule for purposes of *Teague*"); *Al Kokabani v. United States*, 2010 WL 3941836, *6 (E.D.N.C., July 30, 2010) (same); *People v. Bennett*, 903 N.Y.S.2d 696, 700 (Crim. Ct., Bronx County, N.Y. May 26, 2010) ("It can hardly be said that the holding in *Padilla* departs from established precedent. Since the Court finds that *Padilla* does not create a new constitutional rule, it must be retroactively applied to the instant case."); *People v. Bennett*, 2011 WL 285073, *3 (Crim. Ct., Bronx County, N.Y. Jan. 11, 2011) (applying "constitutional duty under *Strickland* as clarified by *Padilla*" with respect to advising a non-citizen client of adverse immigration consequences of guilty plea; denying relief based on finding that attorney advised client to speak to immigration attorney); *United States v. Chaidez*, 2010 WL 3979664, *2-4  (N.D. Ill. Oct. 6, 2010) (applying *Padilla* retroactively to plea, granting coram nobis petition, and vacating conviction due to counsel's failure to advise of immigration consequences); *United States v. Chaidez*, 730 F. Supp. 2d 896,

900-01 (N.D. Ill. Aug. 11, 2010) (applying *Padilla* retroactively to 2003 guilty plea);

*Martin v. United States*, 2010 WL 3463949, *3 (C.D. Ill. Aug. 25, 2010) ("The *Padilla*

case likely did not break new ground or impose new obligations given the Supreme

Court's emphasis on *Strickland*, prevailing professional norms, and the 'long

recognized' importance of the plea negotiation phase."); *United States v. Millan*, 2010

WL 2557699, *1 (N.D. Fla. May 24, 2010) (The right at issue in *Padilla* "does not

appear to be a 'newly recognized' right.  Rather, the seminal case of *Strickland* . . .

provides the underlying constitutional basis for the court's decision."); *People v.*

*Garcia*, 907 N.Y.S.2d 398, 403 n.10 (Sup. Ct., Kings County, N.Y. Aug. 26, 2010)

("*Padilla* did not set forth a new rule, but rather applied its well-settled *Strickland*

test to this immigration-related context."); *id.* at 404 n.13 ("Because I characterize

*Padilla* as one which applied an *old rule* to a new context, no further discussion of

*Teague*'s exceptions for new rules is needed.") (emphasis in original); *People v.*

*Ramirez*, 2010 WL 3769208, * 4 (Crim. Ct., City of N.Y., N.Y. Sept. 17, 2010) ("*Padilla*

merely applied the old rule described in *Strickland* to a specific set of facts . . . .");

*People v. Nunez*, 2010 WL 5186602, *1-2 (Sup. Ct., Appellate Term, N.Y. Dec. 15, 2010)

("[T]he holding [in] *Padilla* should be applied retroactively."); *Luna v. United States*,

2010 WL 4868062, *4 (S.D. Cal. Nov. 23, 2010) ("[T]he Court finds that *Padilla* does not

evince a new rule under *Teague*.  And this means that *Padilla* is an old rule that may

be applied retroactively."); *United States v. Shafeek*, 2010 WL 3789747, *3 (E.D. Mich., Sept. 22, 2010) ("[T]he rule announced [in *Padilla*] is not a 'new rule' regarding a defense counsel's duty to, at the minimum, advise a client of a risk of adverse immigration consequences."); *People v. De Jesus*, 30 Misc. 3d 1203(A), 2010 WL 5300535, *6 (Sup. Ct., N.Y. County, N.Y., Dec. 24, 2010) (holding that *Padilla* "did not announce a new rule" under *Teague*); *Marroquin v. United States*, 2011 WL 488985, *2 (S.D. Tex. Feb. 4, 2011) ("A majority of courts have found that *Padilla* is simply the application of an old rule, concluding that *Padilla*'s holding applies retroactively. . . . [T]his Court joins the majority of other courts that have considered the issue and concludes that *Padilla* does not announce a new rule, that it is an extension of the rule in *Strickland* [](requiring effective assistance of counsel), and that its holding should apply retroactively.").

As of the filing of this motion, undersigned counsel is unaware of any ruling by any of the United States Circuit Courts of Appeals on the issue of the retroactivity of *Padilla*. *See United States v. Gutierrez-Martinez*, 2010 WL 5266490, *3 (D. Minn. Dec. 17, 2010) ("None of the U.S. Circuit Courts of Appeals have ruled on the retroactivity of *Padilla*."); *see also Marroquin*, 2011 WL 488985, * 2 ("No Circuit Court of Appeals has considered the issue . . . .").

Although some courts in other jurisdictions have not applied *Padilla* retroactively, *see, e.g., Miller v. State*, 2010 WL 5381453, *11 (Md. Ct. App., Dec. 29, 2010) (declining to apply *Padilla* retroactively); *United States v. Perez*, 2010 WL 4643033 (D. Neb., Nov. 9, 2010); *United States v. Gilbert*, 2010 WL 4134286, *3-4 (D.N.J., Oct. 19, 2010) (Martini, J., declining to apply *Padilla* retroactively); *United States v. Hough*, 2010 WL 5250996, *3-4 (D.N.J., Dec. 17, 2010) (Martini, J.) (echoing his earlier decision by the same district court judge in *Gilbert*), the analysis in these cases is weak and fails to take into account the persuasive reasons supporting the decisions of the majority of courts that have applied *Padilla* retroactively.

As an example of a poorly reasoned decision failing to recognize the retroactivity of *Padilla*, consider the very brief decision of a lower federal court in Nebraska. *See Perez*, 2010 WL 4643033. In *Perez*, the district court did not address the discussion in *Padilla* regarding the application of the decision to convictions that were finalized prior to that decision. *See* 2010 WL 4643033, *2. The *Perez* decision provides no discussion, or any indication of awareness, of other post-*Padilla* decisions expressly addressing the retroactivity issue. *See* 2010 WL 4643033, *2. The *Perez* court's cursory decision provides no persuasive rationale, much less a detailed discussion, of the basis for precluding the application of the *Padilla* holding to guilty pleas that were entered long after the recognition that the Sixth Amendment

8

guarantees to those accused of crimes the right to the effective assistance of counsel. The poor quality of the analysis by the court in *Perez* counsels against following its dubious ruling.

The reasoning supporting decisions recognizing the retroactivity of *Padilla* is far more persuasive. For example, in *Hubenig*, a federal court in California observed that "[w]hen the Supreme Court applies a well-established rule of law in a new way based on the specific facts of a particularly case, it does not generally establish a new rule." *Hubenig*, 2010 WL 2650625, at *5. The Supreme Court itself stated in *Stringer v. Black*, 503 U.S. 222, 228-29 (1992), that where application of a prior rule of law did not "break new ground," it was not a new rule. Similarly, the Fourth Circuit noted in *Turner v. Williams*, 35 F.3d 872, 884 (4th Cir. 1994), when it applies "an extant normative rule to a new set of facts (leaving intact the extant rule) generally we do not announce a new constitutional rule of criminal procedure for purposes of *Teague*." In *Padilla*, the Supreme Court applied the well-established *Strickland* rule to a new set of facts, left the *Strickland* rule intact, and did not announce a new rule.

The *Strickland* analysis whether defense counsel's advice was deficient under the first prong "requires a case-by-case examination of the evidence." *Hubenig*, 2010 WL 2650625, at *5. *See Williams v. Taylor*, 529 U.S. 362, 391 (2000); *see also Tanner v. McDaniel*, 493 F.3d 1135, 1143 (9th Cir. 2007) ("the general nature of *Strickland*

requires courts to elaborate upon what an 'objective standard of reasonableness' means for attorney performance in innumerable factual contexts"); *Newland v. Hall*, 527 F.3d 1162, 1197 (11th Cir. 2008) ("*Strickland* set forth the paradigmatic example of a rule of general application; it establishes a broad and flexible standard for the review of an attorney's performance in a variety of factual circumstances."). Justice Anthony Kennedy noted in *Wright v. West*, 505 U.S. 277, 308-09 (1992) (Kennedy, J., concurring), that "[i]f the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule." Under the sound reasoning of these cases, specific applications of *Strickland* do not generally establish a new rule for purposes of *Teague*.

In at least three separate relatively recent cases, the United States Supreme Court applied the *Strickland* inquiry in different factual contexts without affording any of these "new rule status under *Teague*." *Hubenig* at *6. *See Rompilla v. Beard*, 545 U.S 374 (2005); *Wiggins v. Smith*, 539 U.S. 510, 522 (2003); *Williams*, 529 U.S. at 391. The Eleventh Circuit observed that "*Williams*, *Wiggins*, and *Rompilla* are not new law under *Teague*." *Newland*, 527 F.3d at 1197. In each of these three cases,

> the Court did nothing more than apply *Strickland*'s standard to a specific set of circumstances: in *Williams*, counsel's failure to uncover available state records indicating Williams's 'nightmarish childhood,' 529 U.S. at 395; in *Wiggins*, counsel's failure to investigate Wiggins's background,

despite evidence of his abusive upbringing, 539 U.S. at 524; and in *Rompilla*, counsel's failure to investigate a file containing evidence that the state intended to use in aggravation. 545 U.S. at 383.

*Newland*, 527 F.3d at 1197.   *Padilla* is similar because the Court "merely applied *Strickland* to defense counsel's failure to advise her client regarding the possible immigration consequences of his guilty plea." *Hubenig*, 2010 WL 2650625, at *6.

Mistakenly regarding *Padilla* as announcing a new rule would lead to an absurd result. An illustration will aid in demonstrating this point. Consider that the offense at issue in *Padilla* was a narcotics offense. 130 S. Ct. at 1477. If failure to give the required immigration advice to a non-citizen defendant accused of a narcotics offense were deemed to be a new rule, then under this erroneous logic, *Padilla*'s holding would not apply to a non-citizen accused of a non-narcotics offense, such as a crime of moral turpitude, even if the failure to provide such advice occurred after the date of the decision in *Padilla*.

Furthermore, consider the detrimental implications of this illogic outside the immigration context.   Suppose a court were to apply *Strickland*'s deficient-performance prong to an attorney's being under the influence of alcohol at trial. Application of that decision would not apply to an attorney's being under the influence of sleeping pills, because each new application of *Strickland* would be regarded as announcing a new rule. Nor would this holding in turn apply to an

attorney's being under the influence of methamphetamine, or cocaine, or heroin.   If

*Padilla* were regarded as announcing a new rule, each application of *Strickland* to a

specific set of facts would be restricted only to other cases with the same specific set of

facts.  This, of course, is absurd, and it is why the vast majority of courts to consider

the issue have recognized that *Padilla* is merely the application of *Strickland*'s well-

established test for ineffective assistance of counsel to the immigration context.  *See,*

*e.g., Marroquin,* 2011 WL 488985; *Bennett,* 2011 WL 285073, * 3; *Shafeek,* 2010 WL

3789747, *3; *Luna,* 2010 WL 4868062, *4; *Millan,* 2010 WL 2557699, *1; *Chaidez,* 2010

WL 3997664; *Martin,* 2010 WL 3463949, *3; *Hubenig,* 2010 WL 2650625, *8; *Al*

*Kokabani,* 2010 WL 3941836, *6; *Garcia,* 907 N.Y.S.2d at 403 n.10, 404 n.13; *Ramirez,*

2010 WL 3769208, *4; *Nunez,* 2010 WL 5186602, *1-2; *DeJesus,* 2010 WL 5300535, *6.

This point is underscored by an examination of the Supreme Court's analysis of

the adequacy of the advice given to Mr. Padilla.  The Court placed its discussion of the

adequacy of the advice given to Mr. Padilla in the context of the right to the effective

assistance of competent counsel.  *See* 130 S. Ct. at 1480-81 (citing *McMann,* 397 U.S. at

771; and *Strickland,* 466 U.S. at 686).  The Court concluded that "advice regarding

deportation is not categorically removed from the ambit of the Sixth Amendment right

to counsel.  *Strickland* applies to Padilla's claim."  130 S. Ct. at 1482.

##### ii.    *The right to competent advice of counsel had deep historical roots.*

The Sixth Amendment right to competent advice of counsel has been recognized

in a host of decisions dating to the 1930s.  *See Powell v. Alabama,* 287 U.S. 45 (1932);

*Johnson v. Zerbst,* 304 U.S. 458 (1938); *Gideon v. Wainwright,* 372 U.S. 335 (1963);

*McMann v. Richardson,* 397 U.S. 759 (1970); *Argersinger v. Hamlin,* 407 U.S. 25 (1972);

*Strickland,* 466 U.S. 668; *Hill v. Lockhart,* 474 U.S. 52 (1985).

In 1932, the *Powell* Court held that the Fourteenth Amendment required the

appointment of counsel in a capital case.   The constitutional footing for this right was

not only due process but also the right to counsel: "In a case such as this, whatever

may be the rule in other cases, the right to have counsel appointed, when necessary, is

a logical corollary from the constitutional right to be heard by counsel."  287 U.S. at 72.

The Court reasoned that "the right to the aid of counsel" is fundamental and essential

to a fair trial.  287 U.S. at 68.

In 1938, the Court in *Johnson* the Court held that the Sixth Amendment

guaranteed the right of indigents to have appointed counsel in all federal criminal

cases.  304 U.S. at 467-68.  This holding was grounded in the practical reality that

laymen view legal procedure as "intricate, complex, and mysterious":

> [The assistance of counsel] is one of the safeguards of the Sixth
> Amendment deemed necessary to insure fundamental human rights of
> life and liberty. . . . The Sixth Amendment stands as a constant
> admonition that if the constitutional safeguards it provides be lost, justice

will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly, and necessary to the lawyer-to the untrained layman-may appear intricate, complex, and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this Court has pointed to '. . . the humane policy of the modern criminal law . . .' which now provides that a defendant '. . . if he be poor, . . . may have counsel furnished him by the state, . . . not infrequently . . . more able than the attorney for the state.'

The '. . . right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defence, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.' The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel.

In 1963, the Court held in *Gideon* that the Sixth Amendment right to appointed counsel was made obligatory on the states by the Fourteenth Amendment. The Court reasoned that "[n]ot only these precedents but also reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth." 372 U.S. at 344.

The *Gideon* Court recognized that the roots of the right to appointed counsel are in the founding values of our Nation:

> The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law.  This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.

372 U.S. at 344.

In 1970, in *McMann*, although the habeas petitioner's claim for relief was denied, the Court observed that "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel."  397 U.S. at 771 n.14 (citing *Reece v. Georgia*, 350 U.S. 85, 90 (1955); *Glasser v. United States*, 315 U.S. 60, 69-70 (1942); *Avery v. Alabama*, 308 U.S. 444, 446 (1940); *Powell*, 287 U.S. at 57 (1932)).  In *McMann*, the Court "indirectly recognized" that the proper standard for attorney performance under the Sixth Amendment is "that of reasonably effective assistance."  *Strickland*, 466 U.S. at 687.

In 1972, in *Argersinger*, the Sixth Amendment right to counsel was recognized as applying to misdemeanor offenses ending in imprisonment, in part due to the need for advice of counsel before a defendant enters a guilty plea: "Beyond the problem of trials and appeals is that of the guilty plea, a problem which looms large in

misdemeanor as well as in felony cases.  Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution."  407 U.S. at 34.

In 1984, the Court in *Strickland*, articulated the now-familiar two-prong test for the effective assistance of counsel---*viz.*, (1) whether the attorney's performance "fell below an objective standard of reasonableness", 466 U.S. at 688, and (2) whether "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.

The *Strickland* court listed some of counsel's basic duties---including not having a conflict of interest, being loyal to the client, consulting with the client, keeping the client informed of important developments, and so forth---but noted that "[t]hese basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance."  466 U.S. at 688.  The Court emphasized that no specific guidelines are needed because the Sixth Amendment "relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions.  The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  466 U.S. at 688 (internal citation omitted).  The impossibility of a definitive checklist was underscored by the

Court's acknowledgment of the practical reality that "[t]here are countless ways to provide effective assistance in any given case." 466 U.S. at 689.

In 1985, the Court applied the *Strickland* test to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. The Court noted that "the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258, 266-67 (1973)], and *McMann*, [397 U.S. at 771]." 474 U.S. at 58-59.

Due to the deep historical roots of the right to competent advice of counsel for criminal defendants, *Padilla* did not announce a new rule for purposes of *Teague* retroactivity analysis. *Padilla* applies to Mr. Pelaez's 2009 plea.

*Padilla* did not extend precedent to a novel setting, and did not announce a new rule for purposes of *Teague*, because prevailing professional norms require reasonably prudent counsel to advise her client with respect to the potential impact of a guilty plea on his immigration status. Moreover, as the discussion above demonstrates, this professional obligation was established long ago. *See Padilla*, 130 S. Ct. at 1480 (noting that in 1986, prior to these changes, courts held that the Sixth Amendment right to effective assistance of counsel applies to a request for a judicial recommendation against deportation or lack thereof, citing *Janvier v. United States*, 793 F.2d 449, 452 (2nd Cir. 1986)). Although the 1996 changes in federal immigration

law are not the source of counsel's duty, they "dramatically raised the stakes of a noncitizen's criminal conviction.   The importance of accurate legal advice for noncitizens accused of crimes has never been more important.  These changes confirm our view that, as a matter of federal law, deportation is an integral part---indeed, sometimes the most important part---of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla*, 130 S. Ct. at 1480.

    iii.    *Years prior to Mr. Pelaez's 2009 plea, professional norms required counsel to give non-citizens competent advice on immigration consequences.*

Under the *Teague* framework, a new rule "may be announced if 'the prior decision is applied in a novel setting, thereby extending the precedent.'" *Stringer*, 503 U.S. at 228, *quoted in Hubenig*, 2010 WL 2650625 at *6.  But the holding in *Padilla* is not a new rule under this analysis because "*Padilla*'s application of *Strickland*'s well-established test for determining whether counsel's performance was objectively reasonable did not produce a novel result." *Hubenig*, 2010 WL 2650625 at *6 (citing *Wright*, 505 U.S. at 309 (Kennedy, J., concurring), and *Tanner*, 493 F.3d at 1144 (case applying *Strickland* "did not produce 'a result so novel' as to have forged a new rule")).  The *Hubenig* court recognized that "[t]he idea that reasonably prudent counsel would advise her client with respect to the potential impact of a guilty plea on

this immigration status is not a novel concept." *Hubenig*, 2010 WL 2650625 at *6 (citing

*United States v. Kwan*, 407 F.3d 1005, 1017 (9th Cir. 2005)).

As long ago as 1974, a federal court of appeals recognized an attorney's

obligation to advise a client of immigration consequences. *See Michel v. United*

*States*, 507 F.2d 461, 465 (2nd Cir. 1974) ("Where his client is an alien, *counsel and not*

*the court has the obligation* of advising him of his particular position as a

consequence of his plea." (emphasis added).).   In 1982, the American Bar Association

recognized a defense attorney's obligation in this regard.   *See INS v. St. Cyr*, 533 U.S.

289, 322 n.48 (2001) (noting that "the American Bar Association's Standards for

Criminal Justice provide that, if a defendant will face deportation as a result of a

conviction, defense counsel 'should fully advise the defendant of these consequences'"

(citing ABA Standards for Criminal Justice, 14-3.2 Comment, 75 (2nd ed. 1982)).   In *St.*

*Cyr*, the Court explained that "[e]ven if the defendant were not initially aware of

[possible waiver of deportation under the Immigration and Nationality Act's prior] §

212(c), *competent defense counsel*, following the advice of numerous practice guides,

would have advised him concerning the provision's importance." 533 U.S. at 323 n.50

(emphasis added).   This duty is grounded in the recognition that "preserving the

client's right to remain in the United States may be more important to the client than

any potential jail sentence."   *St. Cyr*, 533 U.S. at 322-23.   It is also based on the

acknowledgement that "preserving the possibility of [discretionary] relief" from deportation "would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *St. Cyr*, 533 U.S. at 322-23.

The *Padilla* Court found that the obligation of counsel to give advice of immigration consequences is documented in a plethora of sources of prevailing professional norms that long antedate the Court's decision. *See Padilla*, 130 S. Ct. at 1482-83 (citing, *inter alia*, National Legal Aid and Defendant Association, *Performance Guidelines for Criminal Representation* § 6.2 (1995); G. Herman, *Plea Bargaining* § 3.03, pp. 20-21 (1997); Chin & Holmes, *Effective Assistance of Counsel and the Consequences of Guilty Pleas*, 87 Cornell L. Rev. 697, 713-18 (2002); A Campbell, *Law of Sentencing* § 13:23, pp. 555, 560 (3rd ed. 2004); Dept. of Justice Programs, *2 Compendium of Standards for Indigent Defense Systems, Standards for Attorney Performance*, pp. D10, H8-H9, J8 (2000); *ABA Standards for Criminal Justice, Prosecution Function and Defense Function* 4-5.1(a), p. 197 (3rd ed. 1993); *ABA Standards for Criminal Justice, Pleas of Guilty* 14-3.2(f), p. 116 (3rd ed. 1999).

As courts recognizing the retroactivity of *Padilla* have observed, the Supreme Court "had long held that prevailing professional norms 'are guides to determining what is reasonable'" for purposes of determining whether the Sixth Amendment right

to counsel was infringed. *Hubenig*, 2010 WL 2650625 at *7 (citing *Strickland*, 466 U.S.
at 688; *Wiggins*, 539 U.S. at 522 (referring to ABA Standards for Criminal Justice to
determine what constitutes reasonably effective counsel); *Kwan*, 407 F.3d at 1016
(same). The *Hubenig* court persuasively concluded that "[c]onsidering both prior
Supreme Court precedent and the prevailing professional norms, the result in *Padilla*
is not novel." *Hubenig*, 2010 WL 2650625 at *7.

The *Hubenig* court also acknowledged that even though *Padilla* overruled
Ninth Circuit precedent, this fact is "not dispositive of whether it established a new
rule for *Teague* purposes." *Hubenig* at *7 (citing *Tanner*, 493 F.3d at 1143 n. 7
("Although the Court resolved a Circuit split in [*Roe v. Flores-Ortega*, 528 U.S. 470
(2000)], that fact alone does not imply that the Court announced a new constitutional
rule."). Justice O'Connor observed that "the standard for determining when a case
establishes a new rule is 'objective,' and the mere existence of conflicting authority
does not necessarily mean a rule is new." *Wright*, 505 U.S. at 304 (O'Connor, J.,
concurring), *quoted in Williams*, 529 U.S. at 410. The Ninth Circuit's statement in
*Tanner* is most persuasive: "Each time that a court delineates what 'reasonably
effective assistance' requires of defense attorneys with respect to a particular aspect of
client representation, . . . it can hardly be thought to have created a new principle of
constitutional law." *Tanner*, 493 F.3d at 1143-44.

For these reasons, *Padilla* applies retroactively to Mr. Pelaez's plea.

**3.      Other procedural information.**

The single ground asserted as the basis for this petition has not previously been raised in federal court.  Mr. Pelaez does not have any motion, petition or appeal now pending in any court for the judgment he is challenging.

On information and belief, the only attorney who represented Mr. Pelaez in each of the stages of the judgment he is challenging was Steve Sosa, Esq., Assistant Federal Public Defender, Las Cruces Office, 506 S. Main Street, Suite 600, Las Cruces, NM 88001.

Mr. Pelaez was not sentenced on more than one count of an indictment, nor on more than one indictment, in the same court at the same time.  Mr. Pelaez does not have any future sentence to serve after he completes the probation term for the judgment that he is challenging in this motion.

**4.      Timeliness of motion.**

Mr. Pelaez brings this motion on this date, which is more than one year after his judgment of conviction, because the United States Supreme Court recognized the Sixth Amendment right to counsel includes the right to correct advice by counsel as to the immigration consequences of pleading guilty to an offense with deportation consequences or other adverse immigration consequences for a non-citizen defendant,

on March 31, 2010, which is exactly one year prior to the date of this filing.  Under 28

U.S.C. § 2255(f)(3), Mr. Pelaez's motion under Section 2255 is timely because it is being

filed no more than one year after "the date on which the right asserted was initially

recognized by the Supreme Court, if that right has been newly recognized by the

Supreme Court and made retroactively applicable to cases on collateral review."

THEREFORE, Mr. Pelaez asks that the Court vacate his conviction for

misprision of felony under 18 U.S.C. § 4, or any other relief to which he may be

entitled.

Respectfully submitted,

Electronically filed
Scott M. Davidson
JustAppeals.Net
The Appellate Law Office of Scott M.
        Davidson, Ph.D., Esq.
1011 Lomas Boulevard NW
Albuquerque, NM 87102
505.255.9084 (ph)
505.213.7212 (fax)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 31, 2011.

_____
Jose Raul Pelaez-DeLaO